OCTOBER AND NOVEMBER TERM, 1881, No. 245.

## Euwer *versus* Henderson.

1. A. and B. owned adjoining lots. A. being about to build upon his lot, it was agreed by parol between them that A. should build the wall of his house partly upon B.'s land, and that B. should repay to A. one-half of the cost of the wall when B. should use it. After the house was partly built, B. sold his lot to C., who erected a building thereon, used a portion of the wall in so doing, and gave a bond and judgment to A. for one-half of the cost of the part so used. C. afterwards became insolvent, and B. bought back the property at sheriff's sale. *Held,* That A. had no right of action against B.

2. The bond of C. was accepted as payment, and all claim against B. was thereby merged and extinguished, and could not be revived by his purchase of C.'s title.

3. The act of April 10th, 1849, § 4 (P. L. p. 600), discussed.

ERROR to the Court of Common Pleas of *Lawrence County.* *Assumpsit* by John C. Euwer, administrator of John N.

[Euwer *v*. Henderson.]

Euwer, deceased, against Anthony Henderson. Pleas *non assumpsit*, payment with leave, etc.

The facts of the case are sufficiently set forth in the opinion of the Court below, BREDIN, J., upon a question of law reserved at the trial:

"In the fall of 1873, plaintiff's intestate and defendant (brothers-in-law) were the owners of adjoining lots fronting on the principal street of the city of New Castle, the buildings on which had been destroyed by fire. During that fall defendant erected on the rear of his lot a stone building, since known as the 'Stone Fort,' the west walls of which were placed one-half on the land of plaintiff. In February, or March, 1874, the plaintiff's intestate commenced the erection of a brick storehouse on the front part of his lot, and built one-half of the east wall on the adjoining lot. The jury have, by their verdict, found that defendant, who was the owner of the adjoining lot when the excavation was made, and while part of the cellar wall was building, gave his consent to one-half the wall of Euwer's storehouse being erected on his ground, and verbally agreed to pay half the cost of the west wall aforesaid, when he used it.

"Before completion of the cellar wall, on the 23d of April, 1874, defendant sold his lot to Captain Gilliland. Gilliland paid part of the cost of the cellar wall to Long, the builder thereof, at Euwer's request, and settled with Euwer for one-half the brick wall erected after his purchase, giving Euwer his judgment-bond for the amount, which bond remains unpaid. Afterwards the title of Gilliland was purchased by defendant at sheriff's sale, and defendant revested with the ownership of said lot.

"The plaintiff, on the trial of this action, contended that the use of the wall by Gilliland, vendee of the defendant, was a use under the agreement between plaintiff and defendant, and in law a use by defendant, and made defendant liable to pay for one-half of the wall used by the building erected by Gilliland on the adjoining lot purchased from defendant. The jury were instructed, if they found from the evidence that defendant agreed to pay for one-half of the wall (about to be erected by plaintiff between the lots), on said wall being used by defendant, to render a verdict for plaintiff for one-half the cost of the wall used, with interest from date of use, reserving the question whether the evidence showing such use to be by defendant's vendee, and not by defendant, the plaintiff could recover.

"The city of New Castle has no ordinance on the subject of party walls, and there is no statute on the subject affecting this case, unless it be § 4, of act of 1849, No. 377 (P. L. 600).

[Euwer *v.* Henderson.]

" Without contract, therefore, Euwer would have had no right to build the wall beyond his own line, and, if he did so, the adjoiner could have treated it as a trespass, and compelled it to be taken down, or could have used it without paying anything for it. See Sherred *v.* Cisco, 4 Sandford, 480. We are of opinion that the parol license to erect the wall, followed by the expenditure of money in its erection by Euwer, was, after such erection, not revocable by Henderson, or his assigns. See Le Fevre *v.* Le Fevre, 4 Sergeant & Rawle, 244, referring to Short *v.* Taylor. Sufficient importance was not, however, we think, given at the trial to the fact that when Gilliland purchased, the cellar wall was not completed. We can see no reason why the license might then not have been revoked on paying to Euwer the amount expended by him on the faith of such license. This position was not, however, taken at the trial, and can, therefore, have but an indirect bearing on the question before us. Defendant was, of course, under no obligation to use the wall to support any building he might see fit to erect on the adjoining lot. He was only to pay when he used it ; the use was optional with him. This is not the case of Burlock *v.* Peck, 2 Duer, 90, where defendant bound himself in writing to pay for one-half the wall *when used,* a covenant broad enough under the circumstances to cover use by a grantee of defendant.

" We are of opinion that since the act of 1849, if not always, outside the city of Philadelphia, the first builder's interest in a party wall is ' in law what it always was in fact, an interest in the realty, and not a mere personal right :' Knight *v.* Beenken, 6 Casey, 374. That a verbal agreement to pay the half cost of the wall, when the party promising uses the wall, does not alter the legal position of the parties. It is but an agreement to do what the law would compel him to do. ' The owner of the house has no charge against anybody for the half thus built on his neighbor's land, but the wall is his own, and the neighbor cannot use it without paying for so much of it as he intends to use, and on paying he may use it, and then the wall becomes a common wall, and each lot becomes appurtenant to the other, so far as needed for its support. The owner of the wall has, therefore, a contingent claim against the adjoining lot-owner, that he shall pay for his share of the wall before using it, though it is half on his own ground. The price to be paid is consequently a fixed lien on the lot, to be enforced by restraining the full use of it until the wall is paid for :' Roberts *v.* Bye, 6 Casey, 377.

" Though the statutes in regard to party walls in the city of Philadelphia are not in force in the city of New Castle, yet the principles thereby adopted are entitled, we think, to

[Euwer *v.* Henderson.]

weight in deciding the question before us. The agreement of Euwer and Henderson had the effect of putting them in the same position towards each other in regard to their party walls, as though they had been subject to the statutes in force in Philadelphia. If Euwer had exercised his clear right to restrain the use of the wall until paid for, this difficulty could not have arisen. If Henderson had not become re-vested with the ownership of the adjacent lot, we doubt if this action would have been thought of by Euwer. Euwer's dealings with Gilliland were inconsistent with a claim on defendant, and his demand has no equity, except the subsequent use by Henderson of a wall for which he had not been compensated.

" We think the view we take of the law protects the rights of all parties. Euwer is now dead. A few years will relieve his estate from any liability on verbal promises made by him. To hold that Henderson's right to compensation for a future use of the party wall of the ' Stone Fort ' is only against Euwer would be consistent with plaintiff's position here, but not with justice or equity.

" If the contract has the effect claimed by plaintiff, why is the claim not for half of the entire wall? Why should plaintiff's right of recovery be measured and limited to so much of the wall as used by defendant's vendee? Will plaintiff be entitled to a new action on every additional use of the wall ? All these difficulties and inconsistencies vanish when the principle we have adopted as ruling this case is applied. It is simple, clear, and effective, and, while it se-cures rights, avoids litigation, does justice to the original parties to the agreement, and to their heirs and assigns for-ever.

" And now, to wit, November 3d, 1880, the counsel for plaintiff agreeing that judgment shall be entered for defend-ant *non obstante veredicto,* as though the point reserved had been broad enough to cover the fact admitted, that defend-ant's agreement to pay for the wall when he used it was not in writing, and that defendant sold to Gilliland by articles of agreement before the brick wall, for half of which this suit is brought, was commenced, the Court do, on payment of jury fee, direct the prothonotary to enter judgment in favor of defendant *non obstante veredicto.*"

The entry of judgment for defendant was assigned for error.

The act of April 10th, 1849, § 4, is as follows:

" In all conveyances of houses and buildings, the right to and compensation for the party wall built therewith, shall be taken to have passed to the purchaser, unless otherwise

[Euwer v. Henderson.]

expressed, and the owner of the house, for the time being, shall have all the remedies in respect to such party wall as he might have in relation to the house to which this is attached."

This act applies only to Philadelphia County.

*Dana & Long* and *McMichael & McConnell* for plaintiff in error.

The act of 1849 applies only to Philadelphia. This was an express contract, not running with the land, but personally binding Henderson: Weld *v.* Nichols, 17 Pick., 538; Bloch *v.* Isham, 7 Am. Law Reg., N. S., 8; Burlock *v.* Peck, 2 Duer, 90.

*D. B.* and *E. T. Kurtz* for defendant in error.

The contract put the parties in the same position with regard to party walls as residents of Philadelphia County, under the act of 1721, under which it has been held that the first builder has no lien upon the land of the second builder, but that his claim is a personal charge against the builder of the second house: Ingles *v.* Bringhurst, 1 Dallas, 341; Hart *v.* Kucher, 5 S. & R., 1; Todd *v.* Stokes, 10 Pa. St., 156.

The obligation to pay rests only on the party using the wall, and when he uses it. In Bloch *v.* Isham, *supra*, the covenant was to pay when the covenantor, *his heirs or assigns*, used the walls; and in Burlock *v.* Peck, *supra*, the covenantor was to pay for the wall *when used*. Henderson did not use the wall within the spirit of the contract.

OCTOBER 31ST, 1881.—PER CURIAM: We are of the opinion that the judgment of the Court below was right. Henderson was originally liable upon his personal contract to pay for the party wall when he used it. He never did use it. It was broken into, and used by his vendee, Gilliland, who gave his bond and judgment to Euwer, not in any sense as collateral for Henderson, but as payment. The claim against Henderson was merged and extinguished, and it could not be revived by Henderson's subsequently becoming the purchaser at sheriff's sale of Gilliland's title.

Judgment affirmed.